IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FLORA GONZALES, on behalf of herself
and all others similarly situated and on
behalf of the general public,

    Plaintiffs,

v.

EMERITUS CORPORATION,
SUMMERVILLE AT ATHERTON
COURT LLC, BROOKDALE LIVING
COMMUNITIES, INC., BROOKDALE
SENIOR LIVING COMMUNITIES, INC.,
BROOKDALE VEHICLE HOLDING,
LLC; and Does 1 through 50, inclusive,

    Defendants.

No. C 18-06630 WHA

**ORDER RE MOTION TO COMPEL ARBITRATION**

**INTRODUCTION**

In this PAGA and wage-and-hour putative class action, defendants move to compel arbitration. For the reasons stated below, the motion to compel arbitration is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

In September 2019, the California Supreme Court held that the "amount sufficient to recover the underpaid wages" under California Labor Code Section 558(a) could not be brought as part of a PAGA claim. *ZB, N.A. v. Superior Court of San Diego Cty.*, 8 Cal. 5th 175 (2019).

In brief, under California's Private Attorneys General Act of 2004, an aggrieved employee may seek *civil penalties* for Labor Code violations committed against her and other aggrieved employees by bringing — on behalf of California — a representative action against

her employer. If the aggrieved employee prevails, the California Labor and Workforce Development Agency collects 75 percent of the penalties, and the aggrieved employees receive the remainder. Cal. Labor Code § 2699(i) (2016).

Section 558(a) is one of many provisions in the Labor Code which imposes "civil penalties" on employers. *See, e.g.*, *id*. §§ 225.5, 226.8(b), 1174.5. Specifically, Section 558(a) provides as follows (emphasis added):

> (a) Any employer . . . who violates . . . any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to *a civil penalty as follows*: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid *in addition to an amount sufficient to recover underpaid wages*. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid *in addition to an amount sufficient to recover underpaid wages*. (3) *Wages recovered pursuant to this section shall be paid to the affected employee.*

In other words, under Section 558(a), certain employers are liable for penalties of either $50 or $100 per employee for each pay period the employee was underpaid *in addition to an amount sufficient to recover the underpaid wages, which underpaid wages would be paid directly to the affected employee*. Primarily, this language begs the question of whether or not the underpaid wages amount is a civil penalty or a remedy imposed by the statute in addition to the civil penalty.

In 2012, the California Court of Appeal held that the underpaid wages constitute a civil penalty. *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1144–48 (2012). That is, both the $50 and $100 fines and the "amount sufficient to recover the underpaid wages" could be the subject of a PAGA claim.

Having decided that the underpaid wages in Section 558(a) constituted a civil penalty, a different issue materialized in constructing the underpaid wages of Section 558(a). That is, whether the underpaid wages could be separately compelled to arbitration even if the representative PAGA claims remained in court. In brief, one California Court of Appeal decision said yes, and another said no. *Esparza v. KS Indus., L.P.*, 13 Cal. App. 5th 1228, 1234–35 (2017), *review denied*, S244005 (Cal. Nov. 15, 2017); *Lawson v. ZB, N.A.*, 18 Cal. App.

5th 705, 714 (2017), *as modified* D071279, D071376 (Cal. Dec. 21, 2017), *aff'd but criticized sub nom. ZB, N.A. v. Superior Court of San Diego Cty.*, 8 Cal. 5th 175, 193–96 (2019).

This split in authority bled into federal court. An unpublished opinion from our court of appeals found *Esparza*'s reasoning more persuasive — and held that underpaid wages could be separately compelled to arbitration. *Mandviwala v. Five Star Quality Care, Inc.*, 723 F. App'x 415, 417–18 (9th Cir. 2018). But within months, a judge from this district disagreed and found *Lawson* more persuasive — and held that underpaid wages could not be separately compelled to arbitration. *Whitworth v. SolarCity Corp.*, 336 F. Supp. 3d 1119, 1124–26 (N.D. Cal. 2018) (Judge Jacqueline Scott Corley). In between, the undersigned judge adopted our court of appeals' reasoning in *Mandviwala*. *Cabrera v. CVS Rx Services, Inc.*, No. C 17-05803 WHA, 2018 WL 1367323 (N.D. Cal. Mar. 16, 2018).

On March 21, 2018, the California Supreme Court granted review of *Lawson* seemingly to decide this split in authority. The California Supreme Court resolved the split by overruling *Thurman*. Section 558(a)'s underpaid wages were *not* civil penalties after all and could not even be brought under PAGA, the California Supreme Court held. *ZB, N.A.*, 8 Cal. 5th at 193–96.

The California Supreme Court began its analysis by admitting that "at first glance, a plausible reading of [Section 558]" was that all which came after the colon were subclasses of the term "civil penalty" — the term which preceded the colon in Section 558(a). *Id*. at 189. Still, the California Supreme Court concluded that the best way to "harmonize[ S]ection 558's provisions with each other and with the broader statutory scheme," was to give more weight to the words "*in addition to*" in Subdivisions One and Two of Section 558(a). *Id*. at 193. That is, " 'in addition to' appears to indicate . . . that these provisions subject the employer to a civil penalty *on top of, not including*, an amount meant to compensate for unpaid wages." *Id*. at 189 (emphasis added).

In other words, on the specific question of whether PAGA claims for unpaid wages under Section 558(a) could be severed and compelled to arbitration, the California Supreme Court did not side with either *Lawson* or *Esparza* — it instead mooted the issue entirely. PAGA plaintiffs could not bring underpaid wages claims under Section 558(a) at all. The California Supreme

3

Court then remanded to the trial court to decide whether the unpaid wages should be struck or whether the complaint should be amended "to request unpaid wages under an appropriate cause of action." *Id*. at 198.

\* \* \*

In this case, as alleged in the complaint, plaintiff Flora Gonzales worked as a medical aid and technician for seventeen years, providing care to senior citizens in a senior citizen facility. For the first fourteen of those years, either defendant Emeritus Corporation or defendant Summerville At Atherton Court LLC owned and operated the facility. Then, in 2014, three entities — defendant Brookdale Senior Living, Inc., defendant Brookdale Living Communities, Inc., and defendant Brookdale Vehicle Holding, LLC — acquired the facility and imposed a new strict mandatory dispute resolution policy on the employees (Withers Decl. ¶¶ 4–6) (Dkt. No. 1-2 at 4).

No ability to opt out of this policy existed. To the contrary, the policy bound employees automatically when they showed up to work. The arbitration agreement provided: "I understand that even if I do not sign this [a]greement, if I come to work after being given this agreement, I am agreeing to it and so is Brookdale" (*id*. ¶ 6) Moreover, refusal to sign a handbook — which provided mere detail on the arbitration process — would "result in [plaintiff's] immediate termination of employment."

Other provisions within the arbitration agreement took away more rights in connection with the ability to bring class action and PAGA claims. More specifically, Section Eight of the arbitration agreement provided: "[c]lass action waiver. There is no right or authority under this [a]greement for any dispute to be brought, heard or arbitrated as a class or collective action" (*id*. § 8). Section Nine of the arbitration agreement provided: "[PAGA] waiver. There is no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general action." With respect to this PAGA waiver, however, the arbitration agreement also specifically provided that "[t]his provision can be removed from the [a]greement in a case where the dispute is filed as [a] private attorney general action and the court finds this waiver unenforceable. If that happens, then the private attorney general action will be litigated in that court" (*id*. § 9).

4

In 2014, our plaintiff signed both the arbitration agreement and the handbook. In 2017, the facility terminated plaintiff's employment.

In July 2018, plaintiff initiated this PAGA and wage-and-hour putative class action against defendants in Alameda County Superior Court, asserting six claims under the California Labor Code, including relief under Section 558(a), and one additional claim under Section 17200 of the California Business and Professions Code. She asserted four of the Labor Code claims as representative PAGA claims.

In October 2018, defendants removed the action to our district court. Defendants moved to compel arbitration of all claims based on the executed arbitration agreement between the parties. Plaintiff opposed (Dkt. Nos. 1, 14, 15).

Primarily, the parties disagreed on the following three points: (i) whether or not the arbitration agreement could be enforced at all; (ii) if the arbitration agreement could be enforced, whether or not the contractual "waiver" of the ability to assert PAGA claims could be enforced; and (iii) if the contractual "waiver" of the PAGA claims could not be enforced, whether the underpaid wages sought by the complaint under Section 558 could be separated from the rest of the PAGA claims and compelled to arbitration.

After oral argument in December 2018, an order stayed the action in full pending the California Supreme Court's decision in *Lawson* (Dkt. No. 19).

Following the California Supreme Court's decision, the parties filed a joint status report. Plaintiff maintained that the motion to compel should be denied, but that leave be granted "to amend her [c]omplaint regarding the penalties sought under Labor Code § 558" (Dkt. No. 23 at 2). Defendants requested that the arbitration agreement be enforced in full, but that in the alternative, "the PAGA claim must be stayed pending individual arbitration" (*id*. at 4). An order set a new hearing (Dkt. No. 25). Following that hearing, the parties provided supplemental briefing. This order now follows.

**ANALYSIS**

This order *first* holds that the arbitration agreement is enforceable. All claims within the scope of the arbitration agreement must be sent to arbitration. Still, the class-action "waiver"

provides "no right or authority *under this [a]greement* for any dispute to be arbitrated as a class or collective action" and so, the undersigned leaves it to the arbitrator to decide whether there is other authority for which plaintiff does have a right to bring a class or collective action.

*Second*, as to the PAGA claims, this order holds that plaintiff's PAGA waiver is *unenforceable* under binding precedent. Pursuant to the arbitration agreement, the representative PAGA claims remain in the district court and will *not* be sent to arbitration. *Third*, turning to the claims for unpaid wages brought under Section 558, leave to amend the complaint will be permitted so that any claims for unpaid wages alleged under PAGA may comply with *ZB, N.A. v. Superior Court of San Diego County*, 8 Cal. 5th 175 (2019). For efficiency, the representative PAGA claims will be stayed pending the results of arbitration of the individual claims. The details follow.

### 1. THE ARBITRATION AGREEMENT IS VALID AND ENFORCEABLE.

Under the Federal Arbitration Act, a district court determines "whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Here, the parties agree that the agreement encompassed the claims at issue. The arbitration agreement provided that "**any** legal dispute arising out of or related to [plaintiff's] employment . . . must be resolved using final and **binding** arbitration and not by a court or jury trial. That includes any legal dispute that has to do with any of the following: wage and hour law, . . . unfair competition, compensation, breaks or rest periods" (Withers Decl. ¶ 6, Exh. A. § 1) (emphasis in original).

Plaintiff argues that the arbitration agreement is invalid and therefore should not be enforced due to alleged unconscionability and due to a perceived ambiguity in the PAGA waiver. Both arguments fail.

Turning to plaintiff's first argument, the parties agree California state law applies. "Under California law, a contractual clause is unenforceable if it is *both* procedurally and substantively unconscionable." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (emphasis added) (overruled on other grounds). Here, a high degree of unconscionable procedure permeates the provision at issue in that defendants imposed the arbitration agreement

6

on plaintiff without even requiring her signature (although she did sign it) and under threat of terminating her fourteen-year employment. But procedural unconscionability is not enough to invalidate an arbitration agreement on its own, and plaintiff has made an insufficient showing of any overly harsh or one-sided result created by the agreement.

Plaintiff argues that the absence of "[p]laintiff's rights to meaningful discovery" under the agreement satisfies a minimalist version of substantive unconscionability. Any assertion that plaintiff will be deprived of meaningful discovery in arbitration, however, glides over the arbitration agreement itself. On discovery, the arbitration agreement is explicit: "[d]iscovery will be conducted as directed by law or the [a]rbitrator" and the arbitrator may "issue subpoenas, if needed, for witnesses or documents" (Withers Decl. ¶ 6, Exh. A. § 1). The Court therefore can — and does — fully expect that reasonable discovery will be afforded by the arbitrators.

Next, plaintiff argues that the following sentences in the PAGA waiver create ambiguity which invalidate the entire agreement: "[t]his provision can be removed from the [a]greement in a case where the dispute is filed as [a] private attorney general action and the court finds this waiver unenforceable. If that happens, then the private attorney general action will be litigated in *that court*" (*id*. § 1) (emphasis added). The ambiguity here, according to plaintiff, is the emphasized phrase "that court."

Even assuming the phrase is in fact ambiguous, this provision can be severed and therefore does not invalidate the entire agreement. Moreover, the PAGA waiver is also self-contained in its own section of the arbitration agreement. Furthermore, the arbitration agreement's main purpose is to impose arbitration. The PAGA waiver is therefore not central, but collateral, to the purpose of the agreement.

Plaintiff has not met her burden to show that the arbitration agreement is unenforceable. Because the agreement is valid and encompasses the claims at issue, the non-PAGA claims must be arbitrated. The next section will now detail why the PAGA waiver is invalid and why the PAGA claims must therefore remain in this forum.

## 2. THE PAGA WAIVER IN THE AGREEMENT IS NOT ENFORCEABLE.

As stated, the arbitration agreement included a waiver of all claims brought under PAGA. Both the California Supreme Court and our court of appeals have specifically held that these waivers are not enforceable. *See Iskanian v. CLS Transport. Los Angeles, LLC*, 59 Cal. 4th 348, 382–84 (2014); *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 430–40 (9th Cir. 2015). As such, under this binding precedent, the arbitration agreement's PAGA waiver remains unenforceable.

In this connection, the representative PAGA claims must remain in this forum. More specifically, the arbitration agreement provided that "[t]his provision can be removed from the [a]greement in a case where the dispute is filed as [a] private attorney general action and the court finds this waiver unenforceable. If that happens, then the private attorney general action will be litigated in that court" (Withers Decl. ¶ 6, Exh. A at § 9). The parties agree that if the waiver is struck, this provision now refers to the undersigned. The PAGA claims will remain here.

Defendants argue that *Sakkab* and *Iskanian* have been implicitly overruled by the United States Supreme Court's 2018 decision *Epic Systems Corporation v. Lewis*, 138 S. Ct. 1612 (2018). In *Epic Systems*, the Supreme Court held that contract defenses which invalidated arbitration agreements were a "device" that manifested "judicial antagonism" towards arbitration and were therefore preempted by the Federal Arbitration Act. *Id.* at 1623.

When prior circuit precedent has not been explicitly overruled, the analysis turns on whether "the relevant court of last resort . . . undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are *clearly irreconcilable*." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (emphasis added). As relevant here, the reasoning which anchored the Supreme Court's decision in *Epic Systems* is far enough from the reasoning which anchored the California Supreme Court's decision in *Iskanian* and our court of appeals' decision in *Sakkab* that *Sakkab* remains binding.

In *Iskanian*, the California Supreme Court held that an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA

8

actions in any forum is contrary to public policy. Specifically, PAGA waivers harm California in two particular ways, neither of which have anything to do with arbitration. The California Supreme Court stated that "agreements requiring the waiver of PAGA rights would *harm the state's interests in enforcing the Labor Code and in receiving the proceeds of civil penalties used to deter violations*." *Iskanian*, 59 Cal. 4th at 383 (emphasis added). Based on this reasoning, our court of appeals in *Sakkab* succinctly concluded:

> The California Supreme Court's decision in *Iskanian* expresses no preference regarding whether individual PAGA claims are litigated or arbitrated. It provides only that representative PAGA claims may not be waived outright. The *Iskanian* rule does not prohibit the arbitration of any type of claim.

803 F.3d at 434 (citations omitted). Put simply, PAGA waivers are invalid because they hurt California's interest in enforcing the Labor Code and not because of any reason that has anything to do with arbitration. Therefore, our court of appeals held in *Sakkab*, that the Federal Arbitration Act did not preempt the California Supreme Court's decision in *Iskanian*. *Id*. at 439. For these same reasons, the holdings of *Epic Systems* and *Sakkab* are therefore not clearly irreconcilable and this order remains bound by *Sakkab*.

Defendants' arguments to the contrary are unavailing for the specific reason that none demonstrates that our court of appeals' decision in *Sakkab* is clearly irreconcilable with the United States Supreme Court's decision in *Epic Systems*.

The PAGA waiver in this agreement must be and hereby is held invalid. Under the agreement, the representative PAGA claims must remain in this forum. The arbitrability of any unpaid wages claims under Section 558 need not be addressed in light of the California Supreme Court's decision in *ZB, N.A. v. Superior Court of San Diego County*, 8 Cal. 5th 175 (2019).

### 3. LEAVE TO AMEND COMPLAINT AND STAY OF PAGA CLAIMS.

In light of the decision by the California Supreme Court clarifying the ability to allege unpaid wages under PAGA, justice requires that plaintiff be granted leave to amend her PAGA claims to comply with the California Supreme Court's recent decision in *ZB, N.A. v. Superior Court of San Diego County*, 8 Cal. 5th 175 (2019). Accordingly, leave to amend the complaint is **GRANTED IN PART AND DENIED IN PART**. Plaintiff may amend the unpaid wages aspect of her

9

PAGA claims only to allege unpaid wages under a Labor Code provision other than Section 558(a).

Under 9 U.S.C. § 3, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." Our court of appeals has acknowledged that this language "seems to direct that the action 'shall' be stayed pending completion of arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073 (9th Cir. 2014)*; see also Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013). In light of this dictum, and because plaintiff's PAGA claims are derivative of the substantive claims which will proceed to arbitration, the representative PAGA claims are hereby **STAYED** pending the results of the arbitration proceeding.*

## CONCLUSION

To the extent stated, defendants' motion to compel arbitration is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to plaintiff's individual claims which are **ORDERED** to individual arbitration. The motion is **DENIED** as to the representative PAGA claims, which remain in this forum. Those claims are **STAYED** pending arbitration. Leave to amend the complaint is **GRANTED** solely as to the PAGA claims for unpaid wages previously brought under Section 558(a). Plaintiff shall file her amended complaint by **DECEMBER 12 AT NOON**.

**IT IS SO ORDERED.**

Dated: November 23, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

\* In October 2019, defendants filed a notice of settlement between our defendants and a different plaintiff in a different litigation who had also asserted PAGA claims against Brookdale. *See Callahan v. Brookdale Senior Living Communities, Inc., et al.*, No. 2:18-cv-10726-VAP-SS (Judge Virginia Phillips). The notice purported that the settlement, still subject to court approval, will fully settle the PAGA claims alleged by the named plaintiff herein. This settlement has not yet been approved, and so, it is not sufficiently concrete to be considered in resolving this motion.